# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GAIL BEESEN-DWARS | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 C 5593 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| DUANE MORRIS LLP, DAVID YELIN, and JANE L. DALTON, | ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This case is before the court on the pro se motion of plaintiff, Gail Beesen-Dwars, to quash or adjudicate an attorney's lien served by one of her former counsel, Keith L. Hunt, and his law firm, Hunt & Associates (herein, "Hunt"). The court adjudicates the lien at $18,994, plus ten percent of the plaintiff's cash recovery. The reasons follow:

## FACTS

According to the documents before the court, on May 18, 2008, Hunt sent a letter of notice of his attorney's lien to "David Yelin, Duane Morris, LLP," at the law firm's Chicago address. The letter asserted a lien against any recovery made by plaintiff in this law suit "in an amount equal to, at a minimum, 25 percent of any recovery, whether by suit, settlement or otherwise, together with an amount equal to any outstanding hourly fees or litigation expenses," further stating that the present amount plaintiff owed to plaintiff was $41,567 (ignoring change). Doc. 130-1, page 7. Although plaintiff's motion contends there is no evidence that Hunt sent the letter by certified mail, Hunt's response to the motion includes a copy of a signed receipt for certified mail of a letter addressed to "David Yelin, Duane Morris LLP" reflecting a delivery

date of June 2, 2008. Doc. 135-1, page 74.[1] The in-court hearing record will reflect that after a settlement conference between plaintiff and defendants with the designated magistrate judge, the parties by their respective counsel reported to this court at a number of status hearing that the case could be settled and ultimately was settled, the only impediment being the need to resolve Hunt' attorney's lien. The issues before the court are (a) the court's jurisdiction to adjudicate the lien; (b) the validity of the lien; and (c) the amount to which Hunt is entitled, if any.

**ANALYSIS**

1. <u>Jurisdiction</u>.

The court has jurisdiction to adjudicate the fee dispute because it has jurisdiction over the subject matter of the action giving rise to the recovery against which Hunt's lien has been asserted. *See, e.g.*, *Clarion Corp.* v. *Am. Home Prods Corp.*, 464 F.2d 444, 445 (7th Cir. 1972) ("There is no question . . . that a Federal District Court may adjudicate the attorney's fee question pursuant to the lien created by said statute; the theory being that if the original action has a proper basis for Federal jurisdiction then any recovery achieved by that suit creates an attachable interest upon which the attorney may assert his claim for fees.") (internal citation omitted).

2. <u>Validity of the Lien</u>.

The parties agree that Illinois law governs this dispute. The Illinois Attorney's Lien Act, 770 Ill. Comp. Stat. § 5/1 ("the Act"), has two essential requirements for an effective lien: "The

---

[1] Earlier, Hunt sent a lien letter to "David Yelin, Duane Morris LLP" indicating it had been sent by facsimile transmission. Hunt's affidavit attached to his response does not indicate which of the two letters is "the lien letter" but the receipt (signed by someone other than Mr. Yelin) reflects June 2, 2008 as the date of delivery, suggesting that the May 18, 2008 letter is the lien letter on which Hunt relies. Plaintiff's reply does not dispute that Mr.Yelin was properly served, although she argues the law firm was not.

2

attorney must have been hired by a client to assert a claim. The attorney must then perfect the lien by serving notice, in writing, upon the party against whom the client has the claim. The lien attaches from and after the time of the service of the statutory notice." *People* v. *Philip Morris, Inc.*, 759 N.E.2d 906, 911, 198 Ill. 2d 87, 259 Ill. Dec. 845 (2001) (citing *Rhodes* v. *Norfolk & Western Ry. Co.*, 399 N.E.2d 969, 973, 78 Ill. 2d 217, 227, 35 Ill. Dec. 680 (1979)). "Since the attorney's lien is a creature of statute, the Act must be strictly construed, both as to establishing the lien and as to the right of action for its enforcement. Attorneys who do not strictly comply with the Act have no lien rights." *Id.* (citations omitted). The attorney asserting the lien bears the burden of establishing valid service. *Am. Nat'l Bank & Trust Co. of Chicago* v. *ALPS Elec. Co.*, No. 99 C 6990, 2004 WL 783156, at *2 (N.D. Ill. Jan. 15, 2004) (citing *Zazove* v. *Wilson*, 80 N.E.2d 101, 103, 334 Ill. App. 594 (Ill. App. Ct. 1948). The parties agree that plaintiff hired Hunt to assert a claim but plaintiff argues that the lien was not perfected because service was made by an unspecified means of mail and on only one defendant.

    A. <u>Manner of service</u>.

The Act provides, "To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action . . . ." 770 Ill. Comp. Stat. § 5/1. Plaintiff contends that the firm and Ms. Dalton were not served because the lien letter was addressed only to Mr Yelin.

Under the Illinois Code of Civil Procedure § 2-205(a), 735 Ill. Comp. Stat. § 5/2-205(a),"[a] partnership sued in its firm name may be served by leaving a copy of the process with any partner personally or with any agent of the partnership found anywhere in the State . . .

3

." The lien letter, fairly read, is addressed to both Mr. Yelin, who is a partner, and the firm. Although Hunt might have sent two letters, one to Mr. Yelin c/o the firm and one to the firm c/o Mr. Yelin, such a requirement would exalt form over substance indeed.

As for defendant Dalton, she has acknowledged notice of the lien, which is sufficient. In *Unger* v. *Checker Taxi Co.*, 174 N.E.2d 219, 30 Ill. App. 2d 238 (Ill. App. Ct. 1961), on which plaintiff relies, an attorney notified the defendant by ordinary mail of his contract with the plaintiff in litigation. The defendant settled the claim without notice to the attorney and refused to pay the attorney's fee due under the fee agreement. In a law suit against the defendant to recover the fee, the court ruled that because the defendant had never acknowledged receipt of any notice of any attorney's lien by the defendant, there was not compliance with the lien act and the attorney could not recover on his claim. The holding is not as broad as plaintiff suggests, however. The court distinguished *Bloom* v. *Richardson*, 31 N.E.2d 368, 308 Ill. App. 320 (Ill. App. Ct. 1941), which held a lien perfected where the plaintiff had not pled that he served the lien by registered mail, on the basis that "the defendant there acknowledged receipt of the notice by return mail and also informed plaintiff's client of receipt of the notice when settlement was made and required her to post bond to indemnify defendant for any recovery from it on the lien." *Unger*, 174 N.E.2d at 221. *See Bloom*, 31 N.E.2d at 368-69 (abstract of decision reflects reversal of judgment in favor of defendant, stating it was not necessary to specifically allege service by registered mail where defendant had acknowledged receipt); *see also TM Ryan Co.* v. *5350 S. Shore, L.L.C.,* 836 N.E.2d 803, 807, 361 Ill. App. 3d 352, 297 Ill. Dec. 72 (Ill. App. Ct. 2005) ("In cases where courts have upheld the validity of a lien despite a lack of proper service of notice, there was proof of actual notice.")

4

The court infers from these cases that where the defendant acknowledges actual notice, lack of proof of service by personal service or by registered or certified mail does not defeat the lien. Here, all of the defendants through their counsel acknowledged receipt of notice of the lien in open court and in the settlement agreement to which each is a party.[2] As such, Ms. Dalton had actual notice of the lien.

B. Who must be served.

Relying on the lack of statutory service on Ms. Dalton, plaintiff cites *TM Ryan Co.* and *American National Bank* as authority that Hunt was required to serve each of the defending parties in order to perfect the lien. In *TM Ryan Co.*, the court upheld the lower court's finding that the attorney's lien was not perfected but not on the basis that the attorney had not served all defending parties. Rather, it was because the party against whom the lien was asserted (an insurance carrier) had not been served by registered or certified mail and there was no evidence of actual notice. *TM Ryan Co.*, 836 N.E.2d at 807. The court also stated that actual notice to the defendant in the underlying litigation was not actual notice to its insurance carrier. *See id*. at 808 ("[T]he trial court did not consider [the underlying defendant's] actual notice of the lien, nor should it have. Only [the insurer's] actual notice of the lien is relevant for purposes of perfecting the attorney's lien.").

*American National Bank* was an interpleader action where the bank asked the court to determine the rights of several claimants to an account held by one of its account holders. After depositing the funds with the court, the bank was dismissed. The litigation continued among the claimants and eventually settled. Attorneys for a claimant who received a portion of the funds

---

[2] The settlement agreement is confidential but the court has reviewed it *in camera*.

asserted an attorney's lien on the proceeds. The court rejected the argument that service on the stakeholder bank was sufficient notice under the Act, pointing out that in an interpleader action the dispute is between claimants to the fund, and the stakeholder is typically dismissed from the law suit as soon as it has deposited the funds. Thus, the claimant which was to receive the funds in the settlement was entitled to notice of the lien. *Am. Nat'l Bank*, 2004 WL 783156, at *2. Neither of these cases stands for the proposition plaintiff asserts. Indeed, they both indicate that the party that must be served is the party against whom the lien is asserted.

This leads to plaintiff's argument that because Ms. Dalton was not served, the notice is defective. While it might be true that had the firm or Mr. Yelin paid the proceeds to plaintiff in derogation of the lien, and Hunt sued Ms. Dalton, Ms. Dalton might have an arguable notice defense, this does not mean that plaintiff has standing to assert a technical defense to Hunt's claim. *See, e.g.*, *Cirrincione* v. *Johnson*, 184 Ill.2d 109, 113, 703 N.E. 2d 67, 69, 234 Ill. Dec. 455, 457 (1998) ("This court has emphasized . . . that technical deficiencies should not be allowed to overwhelm the purpose of a lien statute . . . [which is] to preserve the substantial rights of those against whom the remedy offered by the statute is directed, and it is never employed otherwise.") (citation and internal quotation marks omitted.) For these reasons, the court concludes that Hunt's lien was perfected.

3. The amount Hunt is entitled to receive.

"An attorney who withdraws from a case for a justifiable cause or is terminated without cause may recover compensation for services rendered. *Twin Sewer & Water, Inc.* v *Midwest Bank & Trust*, 720 N.E.2d 636, 639, 308 Ill. App. 3d 662, 242 Ill. Dec. 15 (1999) (citing *Upgrade Corp.* v. *Mich. Carton Corp,* 410 N.E.2d 159, 160, 87 Ill.App.3d 662, 43 Ill. Dec. 159

(Ill. App. Ct. 1980)). "The measure of the lawyer's recovery lies in *quantum meruit* for the services actually rendered." *Id.* (citing 7A C.J.S. Attorney & Client §§ 290-91, at 540-45 (1980)).

> *Quantum meruit* literally means as much as he deserves. In *quantum meruit* recovery, the former client is liable for the reasonable value of the services received during the attorney's employment. *Quantum meruit* is based on the implied promise of a recipient of services to pay for valuable services because otherwise the recipient would be unjustly enriched.

*Much Shelist Freed Denenberg & Ament, P.C.* v. *Lison*, 696 N.E.2d 1196, 1199, 297 Ill. App. 3d 375, 231 Ill. Dec. 625 (Ill. App. Ct. 1998) (internal quotation marks and citations omitted). To determine the reasonable value of services, the court is to consider "the skill and standing of the attorney employed, the nature of the case and the difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary fee in the community, and the benefit resulting to the client." *In re Estate of Callahan*, 578 N.E.2d 985, 990, 144 Ill. 2d 32, 161 Ill. Dec. 339 (1991) (quoting *Mireles* v. *Ind. Harbor Belt R.R. Corp.*, 507 N.E.2d 129, 132, 154 Ill. App. 3d 547, 107 Ill. Dec. 465 (Ill. App. Ct. 1987)).

Although plaintiff complains vociferously (in her reply memorandum) about the quantity and quality of Hunt's representation of her, she does not dispute that he sought leave to withdraw because she did not pay him as promised. And Hunt does not dispute that plaintiff has paid Hunt $24,122.50 for legal fees and costs. Hunt's time records reflect that his first meeting with plaintiff was on July 28, 2005. He represented her through a mediation process and dismissal of a state court case. He filed the federal complaint on October 6, 2006 and soon defended a motion to dismiss that raised numerous issues of federal and state law. *See* Docs. 15, 19. The

7

court ruled in favor of plaintiff on many issues and ordered plaintiff to file an amended complaint. The amended complaint (Doc. 32), filed August 27, 2007, included claims of sex discrimination, age discrimination, harassment based on sex and age, retaliation, breach of fiduciary duty, interference with prospective economic advantage, breach of contract, negligence, intentional infliction of emotional distress and fraudulent concealment. A scheduling order was entered September 20, 2007 (Doc. 36) and modified on April 28, 2008, extending non-expert discovery to August 1, 2008. Hunt's time records reflect considerable detail as to his activities, including a great deal of time in conference with plaintiff, working on discovery, court appearances, drafting and such.

Hunt's expectation based on the fee agreement was compensation at 50 percent of his normal hourly rate ($175 for him), plus the greater of 25 percent of the value of any recovery or fees and expenses awarded by the court under fee-shifting statutes.[3] Hunt contends, however, that he deserves to be paid at his "regular" hourly rate for 375.0 hours of work devoted by himself ($400 per hour) and two other attorneys at his law firm billing at $325 and $250 per hour respectively, totaling $142,076.75, less the $24,122.50 paid, or $117,954.25. (Hunt agrees not to challenge any portion that should be allocated to costs). Hunt believes the higher rate better reflects the reasonable value of his services. Using the contracted-for fee, plaintiff would owe approximately $47,400 based on the 375-hours billed, plus at least 25 percent of the recovery.

With respect to the factors of Hunt's skill and standing, the nature of the case and the difficulty of the questions at issue, the amount and importance of the subject matter, the degree

---

[3] Presumably, this means Hunt's best case scenario was $550 an hour, but this is wholly unrealistic as the court would not permit imposition of fees on both the plaintiff and the defendant in this manner.

of responsibility involved in the management of the case, and the time and labor required, the court sees no red flags suggesting Hunt's representation was substandard or that he overbilled his client. Indeed, the court is well aware that employment discrimination cases are typically vigorously defended, intensively fact-driven, and they require a great deal of pretrial preparation. Plaintiffs' lawyers must avert multiple legal trap doors in their path. In this particular case, Hunt's characterization of his client as "difficult" is not surprising in that plaintiff presented herself at numerous appearances before the court as extraordinarily strong-willed about how the case should proceed, less than forthcoming in complying with orders, seeking many delays, and failing to make discovery, evoking motions for sanctions from the defense which the court ultimately granted after futile efforts to gain voluntary compliance. The court is not inclined to reduce Hunt's compensation based on excessive hours or substandard representation.

Turning now to the issues of the usual and customary fee in the community and the benefit resulting to the client, the court is less persuaded by Hunt's submission. First, the court is loath to measure the reasonable value of Hunt's services at a price higher than he negotiated with plaintiff. It will assume he did not enter into an unreasonable fee agreement. Second, in the real world, the overwhelming majority of employment discrimination cases fail at summary judgment or they settle. When they settle, as this one did, the value of the case is compromised and the attorney's fee is compromised. The court assumes that had Hunt continued to represent plaintiff, the case would have settled under the same terms as it settled in fact. The settlement value of the case, although confidential, is a small fraction of the demand of more than $1 million contained in the Complaint. Had Hunt refused to significantly compromise his fee, the case could not have settled and he would have risked loss of the entire case. In light of all of

9

these factors, the court will compromise Hunt's claim at a reasonable figure of 60 percent of the billed amount plus a 12.5% percent share of the recovery, inasmuch as Hunt cannot fairly reap the full benefit of a settlement his successor counsel actually negotiated. The billed amount is $71,862, of which a 60 percent share is $43,117. Plaintiff has paid $24,123, leaving a balance of $18,994. The parties may calculate the remainder. Hunt is entitled to prejudgment interest on $18,994 from the date of his withdrawal. The remainder shall not include prejudgment interest.

## ORDER

Keith L. Hunt's attorney's lien is adjudicated at $18,994, plus ten percent of plaintiff's settlement recovery. Hunt's claims to any additional costs and expenses are specifically merged with this adjudication.

Dated: February 12, 2010          Enter: _____
                                  JOAN HUMPHREY LEFKOW
                                  United States District Judge